Filed 6/18/25  P. v. Bermudez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099996 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE005516) |
| v. | |
| MICHAEL M. BERMUDEZ, | |
| Defendant and Appellant. | |

Defendant Michael M. Bermudez requested mental health diversion pursuant to Penal Code section 1001.36.[1]  The trial court denied the request, finding defendant posed an unreasonable risk of danger to public safety.  Defendant then pleaded guilty to making criminal threats and the court sentenced him to three years in state prison.  On appeal,

_____

[1]  Undesignated statutory references are to the Penal Code.

1

defendant argues no substantial evidence supports the trial court's finding of unreasonable risk of danger. We disagree and affirm the judgment.

We agree with the parties that fines and fees reflected in the minute order and abstract of judgment but not imposed in the trial court's oral pronouncement of judgment must be stricken. We will direct the trial court to issue a corrected abstract of judgment striking the fines and fees.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 19, 2023, the 15-year-old female victim was walking to the laundromat and saw defendant. She knew defendant was going to chase her because he had in the past. He saw the victim and ran after her. She locked herself in the laundromat. He hit the laundromat door and told her that today would be the last day she lived; she thought he was going to kill her. A witness saw defendant go into the garden area and saw a knife. Defendant denied having a knife or chasing anyone, claiming he just needed something to eat.

On April 14, 2023, the male victim saw defendant throw some kind of liquid on his car, which the victim had just detailed. The victim verbally confronted defendant. Defendant was about 20 to 25 feet away, and he cursed at the victim and said, "I'll cut your fucking nuts off." He reached into his pants and pulled out a knife, but immediately put it back. He came to about 15 feet from the victim, who called the police. He then turned and walked away. He appeared to the victim to be on drugs.

In May 2023, a complaint deemed an information charged defendant with making criminal threats to the male victim (§ 422; count one), carrying a concealed dirk or dagger (§ 21310; count two), and making criminal threats to the female victim (§ 422;

2

count three).  The information alleged enhancements for personal use of a dangerous weapon (§ 12022.5, subd. (b)(1)) in counts one and three.[2]

In October 2023, defendant requested pretrial mental health diversion pursuant to section 1001.36.  He attached an August 2023 crisis assessment by a social worker at the Sacramento County jail as an exhibit thereto.  The assessment noted that defendant reported being diagnosed with schizophrenia and taking Zyprexa medication and likely experiencing mental health symptoms during a crime.  The assessment summarized defendant's risk level as:  "Minimal risk:  No known risk factors for harm to self or others."  Under "Safety Plan/Next Steps," the assessment stated that the recommended care was a community program.

Defendant also attached a substance use assessment in September 2023, prepared by the same social worker.  Defendant reported using drugs since age 16 and recent use of methamphetamine prior to incarceration.  This assessment also rated defendant as no danger or immediate threat to himself or others and recommended residential care.

A mental health diversion form set forth defendant's criminal history including multiple misdemeanor convictions and one felony conviction for assault in 2015.  (§ 245, subd. (a)(4).)  The form noted that the People objected to diversion.

On October 26, 2023, the trial court conducted a hearing on defendant's request for mental health diversion.  The court summarized the facts of the two current offenses and noted that defendant had suffered a misdemeanor assault conviction in 2022, a misdemeanor false imprisonment conviction in 2021, which the prosecutor noted

---

[2]  The information noted that a drug paraphernalia charge (Health & Saf. Code, § 11364; count four) was dismissed at the preliminary hearing and a weapon use enhancement added to count three.  An amended information filed on November 13, 2023, added allegations that the crime involved great violence (Cal. Rules of Court, rule 4.421 (a)(1)), the victim was particularly vulnerable (*id.*, rule 4.421(a)(3)), defendant was on probation at the time of the offense (*id.*, rule 4.421(b)(4)), and his performance on probation was unsatisfactory (*id.*, rule. 4.421(b)(5)).

involved a knife, and a felony assault conviction in 2015. The court described defendant as 31 years old, schizophrenic, struggling with methamphetamine usage, and intermittently homeless since age 16.

Defense counsel argued that defendant did not have a knife in the February incident, although a witness had seen a broken knife in the garden area. Defendant was unmedicated and hallucinating at the time, and the assessment acknowledged that he was experiencing mental health issues during the incident. Between the February and April incidents, defendant was out of custody but did not return to the laundromat or contact the victim. There was no increase in aggressive behavior during this period, and the victim in the April incident did not state that defendant had chased him, but rather that defendant was 30 feet away when he made threatening statements.

Counsel noted the current plea offer to defendant was two years and two strikes. Counsel argued that, since defendant had already served six months in custody, the offer would permit defendant's release (through parole) sooner than would mental health services (through diversion). Further, mental health diversion would give defendant the opportunity to address his homelessness, which had greatly contributed to his drug use, and provide medication and housing support he had not received before. Counsel asserted that, since defendant had been in custody, he had been "a hundred percent medication compliant."

Defendant then added: "I do apologize for the hassle and the violence. I didn't threaten anybody on either of those days."

The prosecutor opposed defendant's request, arguing danger to the community. The prosecutor noted that the minor victim knew defendant was going to chase her because he had chased her before. The prosecutor observed that defendant's 2021 misdemeanor conviction involved a knife, and that although there were no other incidents between February and April, this was only a two-month period.

4

The trial court denied defendant's request for mental health diversion, finding defendant eligible but not suitable for diversion. The court explained: "Here [defendant] does have a demonstrated violent criminal record, though some get resolved as a misdemeanor. The assaultive nature and there was a weapon. There was a felony 245(a)(4) from 2015. This conduct here is clearly very threatening. I don't think he has a full appreciation perhaps of all of his conduct while in the community, but it is of sufficient concern. [¶] The Court does find that there is a public safety bar even under the high standard as set forth in the statute and the case law and, therefore, the Court is denying the application at this time."

On November 14, 2023, defendant pleaded no contest to count three and stipulated to an upper term sentence of three years, with the remaining charges to be dismissed at sentencing. He admitted to two aggravating factors: the threat involved great bodily harm (Cal. Rules of Court, rule 4.421(a)(1) and the victim was particularly vulnerable (*id.*, rule 4.421(a)(3)). The parties stipulated to a description of the events read by the prosecutor.

On December 1, 2023, the trial court sentenced defendant to three years in prison with credit for time served. The remaining counts and enhancements were dismissed with *Harvey* waivers for purposes of restitution, probation, and no contact and stay away orders. (See *People v. Harvey* (1979) 25 Cal.3d 754.) Defendant filed a timely notice of appeal and obtained a certificate of probable cause.

DISCUSSION

I

*Mental Health Diversion*

Defendant contends the trial court's finding that he posed an unreasonable risk of danger if he received treatment in the community is not supported by the record. As we next explain, we find no abuse of discretion.

Section 1001.36 requires a two-step review for pretrial diversion petitions. (*Id.*, subds. (b), (c).) First, the trial court must find a defendant eligible for pretrial diversion if: (1) the defendant has been diagnosed with a qualifying mental disorder; and (2) the defendant's mental disorder was a significant factor in the commission of the charged offense. (*Id.*, subd. (b).) We need not discuss this first step further, because the trial court found defendant eligible but not suitable for mental health diversion. At issue here is the second step, suitability for diversion. (*Id.,* subd. (c).)

A defendant is suitable when, among other requirements, they will not pose an "unreasonable risk of danger to public safety" if treated in the community. (§ 1001.36, subd. (c)(4).) An "unreasonable risk of danger to public safety" is defined as "an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).)

As relevant here, "[t]he violent felonies encompassed in this definition 'are known as "super strikes" and include murder [and] attempted murder.'" (*People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*).) "In determining the risk of danger, section 1001.36 contemplates the trial court will consider the opinions of the district attorney, the defense, and qualified mental health experts, as well as the defendant's violence and

6

criminal history, the current charged offenses, and any other factors the court deems appropriate." (*Id.* at p. 450.)

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence. [Citations.] A trial court has 'broad discretion to determine whether a given defendant is a good candidate for mental health diversion.' [Citation.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citation], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.) The fact that reasonable minds may differ as to the appropriate resolution of an issue does not signal an abuse of discretion. (*People v. Clair* (1992) 2 Cal.4th 629, 655.) It is the defendant's burden to establish abuse of discretion. (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.)

We conclude substantial evidence supports the trial court's finding that defendant was unsuitable for diversion because he posed an unreasonable risk of danger, namely, committing attempted murder or murder. In two incidents two months apart, defendant threatened two people with death and great bodily injury, in one instance armed with a knife and in the other possibly armed with a knife. In the February incident, defendant banged on the door of a laundromat where a 15-year-old girl had taken refuge and told her she was going to die that day. The record also reflected that the victim had seen defendant with a knife and a gun in the past. The day of the February attack, a witness saw a knife in the garden area after hearing defendant say to the victim, "when I get you, I'm going to stab you." In the April incident, defendant threatened to cut off the victim's genitals while displaying a knife. As the trial court noted, defendant had a history of assaultive conduct. The February assault was entirely unprovoked and was apparently not without precedent, as the victim reported that she "knew he was going to run after me and chase me because that's what he always does. He comes here all the time for the past

7

several months. He grabbed my hand last time and tried to pull me into a trash can. He always yells at me and chases me when he sees me. I have seen him with a knife and gun in the past."

Moreover, the trial court's concern that defendant still did not have "a full appreciation . . . of all his conduct while in the community" is supported by his in-court denial that he had threatened anyone during either of the charged offenses. This denial came after counsel had declared him to be "a hundred percent medication compliant."

Defendant argues that the trial court erred in denying diversion based on his criminal record, which he contends is in contravention of the statute requiring evidence that defendant will commit a super strike, not simply another criminal violation. But section 1001.36 "grants broad discretion to the court to consider any factors it deems appropriate when assessing dangerousness, and it expressly included 'the defendant's violence and criminal history' and 'the current charged offense' among the permissible factors." (*People v. Graham* (2024) 102 Cal.App.5th 787, 799.) Defendant points to the lack of evidence that he previously committed a super strike and argues there is no reason to speculate that his conduct while in treatment would escalate to committing such an offense. But the trial court was not required to find that defendant had already committed a super strike in order to find he posed an unreasonable risk of committing murder or attempted murder; it could reasonably infer that defendant's criminal behavior presented a risk that his threats of deadly violence would escalate to the use of deadly force. (*People v. Hall* (2016) 247 Cal.App.4th 1255, 1266.)

Although defendant relies on the crisis assessment that he had "no known risk factors for harm to self or others," the record does not reflect that the trial court *disregarded* this evidence. The court was within its discretion to find that other evidence also in the record, including the substantial evidence we have discussed *ante*, supported

an opposing view and was more compelling. A reasonable choice between conflicting evidence is not an abuse of discretion.

Defendant next maintains that the trial court sentenced him "to a prison term that was less time than the 2-year mental health diversion," undermining a concern that he would commit a super strike in the community. But that is not the test for error. In denying diversion, the court adequately considered the permissible factors, including the facts of the current offenses, defendant's criminal history, and the opinions of the prosecution and defense counsel. (See § 1001.36, subd. (c)(4) [permitting the trial court to consider such evidence when determining whether defendant poses an unreasonable risk to public safety].)

Defendant argues that relevant case law does not support the trial court's ruling, citing *Moine, supra*, 62 Cal.App.5th 440, and *People v Williams* (2021) 63 Cal.App.5th 990, where the reviewing courts concluded the trial courts abused their discretion in finding unreasonable risk to public safety (*Moine*, at p. 451; *Williams*, at p. 1003). In both cases, the defendants had been on pretrial release prior to hearings on their motions for pretrial diversion. The appellate courts opined that the fact that the trial courts had granted pretrial release "indicate[d] the court necessarily found that [the defendant] was not likely to cause 'great bodily harm to others' if released." (*Moine,* at p. 451; *Williams,* at p. 1003.) In *Moine*, the court broadly stated "[i]t is logically inconsistent to deny mental health diversion on the ground that [the defendant] was likely to commit a super strike offense, while simultaneously finding he was not likely to inflict great bodily injury on persons in the community." (*Moine*, at p. 451.)

First, no such "logical inconsisten[cy]" exists here, where defendant had been in custody since his arrest after the April 2023 incident.

Further, both *Moine* and *Williams* are factually distinguishable. In *Moine*, the defendant was in a fistfight with another patient at an urgent care facility and threatened to shoot an urgent care worker a year later. (*Moine, supra*, 62 Cal.App.5th at p. 444-

9

445.)  After defendant threatened the worker, he " 'immediately' " apologized " 'profusely.' "  (*Id*. at p. 445.)  There was no evidence he possessed or had access to a gun.  (*Id*. at p. 451, fn. 2.)  Two psychiatrists opined that he posed a low risk for future assault, and one of them concluded he had never been adequately diagnosed or treated in the past.  (*Id.* at p. 446.)  He had prior misdemeanor convictions but only one pending misdemeanor case involving even potentially violent conduct.  (*Id.* at p. 450.)

In *Williams*, the defendant threatened his victims through e-mails and letters.  (*People v. Williams, supra,* 63 Cal.App.5th at pp. 993-994.)  However, he "never actually assaulted anyone or engaged in any violence."  (*Id.* at p. 1003.)  He had no prior criminal history, and two mental health professionals opined that he posed a low risk to public safety.  (*Ibid*.)

Here, defendant had an extensive criminal history, including a felony assault and false imprisonment convictions involving a knife.  His current offenses involved violence and threatened violence, as well as brandishing weapons.  One social worker twice opined that he was low risk without explanation as to how they arrived at this opinion.

In sum, the record supports the trial court's finding that defendant posed an unreasonable risk of danger to the public.  While reasonable minds may differ, and there was evidence supporting a different conclusion, the court did not abuse its discretion in denying defendant's request for mental health diversion.  It necessarily follows that the court did not violate defendant's due process rights.

II

*Abstract of Judgment*

Defendant contends that the minute order and abstract of judgment improperly contain fees and fines not articulated in the trial court's pronouncement of judgment.  The People concede the error.  The parties agree that the trial court did not impose any fines and fees at the sentencing hearing.  The minute order includes multiple fines and fees, as does the abstract of judgment.  The oral pronouncement of the court controls.  (*People v.*

10

*Mitchell* (2001) 26 Cal.4th 181, 185-186.)  An appellate court may order correction of an abstract of judgment that does not orally reflect the oral judgment of a sentencing court. (*Ibid*.)  Accordingly, we will direct the trial court to prepare a corrected abstract of judgment that does not include any fines and fees not orally imposed.

DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment omitting any fines and fees not imposed, and to provide a certified copy thereof  to the Department of Corrections and Rehabilitation.


                                                   /s/
                                                Duarte, J.


We concur:


      /s/
Hull, Acting P. J.


      /s/
Robie, J.


11